CATHARINE HOWELL and others, appellants, and JOSEPH N. TUTTLE, trustee, respondent.

1. The testator directed his trustees to pay over the income of his estate *in three and one-eighth parts*, to wit: one-third part to his daughter, C. H.; one-third part to his daughter, S. B., and one-third and one-eighth parts to his daughter, M. D. *Held*, that M. D. was entitled to one-eighth more of the *whole estate* than either of her sisters, making ten twenty-fourths for M. D., and seven twenty-fourths for C. H. and S. B., each.

2. The testator also directed, in case of the death of either daughter, without children, that his trustees should pay the income arising from his estate, *in the proportions aforesaid*, to his surviving daughters, stating his intention that the share of such daughter should sink into, and constitute a part of his estate in the hands of his trustees, and the income arising therefrom, be divided among his surviving daughters *in manner aforesaid.* *Held*, that if C. H. should die without children, her share would be a part of the whole income, and M. D. entitled to one-eighth more of the whole than S. B., and not to one-eighth more of the whole, and one-eighth more besides, than S. B., of the share of C. H.

3. The same rules apply to the disposition of the principal sum under this will.

The opinion of the Chancellor is reported *ante, p.* 176.

Mr. *J. P. Bradley*, for appellants.

Mr. *C. Parker*, for respondent.

The opinion of the court was delivered by

BEDLE, J.    The bill in this case was filed by the trustee, to ascertain the shares of principal and income, of certain legatees under the will of David Doremus, deceased.    The testator bequeathed and devised to the complainant and William A. Myer, as trustees, (the said Myer having deceased, leaving the complainant the sole trustee), the residue of his personal and real estate, to receive the rents, issues, and profits of his real estate, and the interest and income of his personal estate, and in trust further, as follows: "To pay

over all the interest and income, rents, issues, and profits arising from my said estate, after deducting all legal charges on the same, *in three and one-eighth parts*, to wit: one-third part to my daughter, Catharine Howell; one-third part to my daughter, Sally Brogaw; and one-third and one-eighth parts to my daughter, Maria Duncan." The question arising upon this language, is as to the shares of each of the three daughters. In determining it, we must look for the intention of the testator, as gathered from these words, or taken in connection with other parts of the will. The appellants contend that Maria Duncan should not receive, as is claimed by her, one-eighth more of the whole than either of the other two daughters, but that the estate should be divided into three parts, in such way as that two of them will be equal to each other, and the other part exceed either of the two parts by one-eighth, the result of which would be eight twenty-fifths to Catharine Howell and Sally Brogaw, each, and nine twenty-fifths to Maria Duncan, making her share exceed either of the shares of her two sisters, by one-eighth thereof, or one twenty-fifth of the whole.

This construction, I think, cannot be sustained. The simple and natural construction is, that the testator intended that Maria should have one-eighth more of the whole estate than either of her sisters, and that although there were but three legatees, yet, as a *mode* of ascertaining their shares, and to give Maria the one-eighth more of the whole than the others, he intended that it should be divided into four parts, one of which parts should be one-eighth of the whole, and the other parts each one-third of the remainder, after deducting the one-eighth. He first divides the estate into *three and one-eighth parts;* that is, into three parts and one-eighth part, not into *thirds* of the whole, and one-eighth of the whole, as that would be impossible, but into such proportions as that there will be *three parts and one-eighth part.* The one-eighth part is particularly designated as one of the parts, and the other three parts are to be ascertained by dividing the residue, after deducting the one-eighth, into three parts. This

division was merely intended to carry out the object of giving Maria one-eighth more of the whole, than either of the others. Taking, then, the estate as so divided into the four parts, viz. one-eighth of the whole, and the residue into three parts, the testator bequeathed the *one-third part* to Catharine and Sally each, using the term *one-third part,* to designate one of the parts into which the estate was divided, and not the one-third part of the whole estate; and after bequeathing one-third so designated, to each of the daughters, Catharine and Sally, there remained two other of the designated parts, viz. the *one-third, and one-eighth parts,* which he bequeathed to his daughter, Maria. It appears to me that this was a very easy and practical mode of ascertaining the shares of each, based upon the intention of allowing Maria to have one-eighth more of the whole estate, than the other two legatees. In another part of the same item of the will, wherein the testator directs his trustee, at the death of either of the daughters, leaving children, to pay over to such children the principal on which the parent received interest and income, he uses this language: "calculating the principal on the same basis as the interest is herein calculated, that is, one-third to each of my daughters, except my daughter Maria Duncan, whose share is to be one-third and one-eighth *of principal as well as interest.*" The one-eighth is here used as a fractional part of the whole principal as well as interest, and the one-third as one of the designated parts, after deducting the one-eighth. This construction does no violence to the language. The view suggested by the appellants, would necessitate the insertion of words to show that the testator intended to refer the one-eighth to the other shares of Catharine and Sally, and to make it only the one-eighth more than either of them, instead of the entire principal and interest. I think, with the Chancellor, that if he had so intended, it would have been so expressed. Giving the will this construction, the share of Maria Duncan of the income, interest, rents, issues, and profits, would have been ten twenty-fourths, and the shares of Catharine Howell and Sally Brogaw, each, seven twenty-

fourths, and at the decease of each, leaving children, the principal of the estate, to which the children would be entitled, should be ascertained in the same proportions. So far, then, as these matters are concerned, the decree of the Chancellor should be affirmed.

But the decree proceeds further, and directs, "that upon the decease of the said Catharine Howell, without leaving lawful issue, if it shall happen in the lifetime of the said Sally Brogaw and Maria Duncan, the income arising from *the share of the said Catharine Howell,* shall be divided between the said Sally and Maria, in the proportions above mentioned, and at their decease, or in case the said Catharine survives the said Sally and Maria, at her decease, the remaining *seven twenty-fourths* of said trust estate shall be divided in like manner, between the children of the said Maria Duncan and Sally Brogaw." Catharine is a widow, without children; Maria and Sally each leave several, all of whom are parties in this cause. This part of the decree was made to cover the contingency of Catharine dying without issue. Should it be otherwise, of course, any decree made with reference to that contingency could have no effect. There is nothing in the opinion of the Chancellor referring to the disposition of the share of Catharine at her death, without children, and the decree was probably signed without the attention of the Chancellor being directly called to that part of it now in question. The decree upon this matter has reference to the *share* of Catharine, to wit, the *seven twenty-fourths,* and directs the income from it to be divided between Sally and Maria, "in the proportions above mentioned," the effect of which would be to divide the income of that share between Maria Duncan and Sally Brogaw, in the proportion of one-eighth more of it to Maria than to Sally. The operation of the decree, at the death of Catharine leaving no issue, and with her two sisters surviving, would be as follows: Maria would get ten twenty-fourths of the whole income, being her original proportion; Sally would get seven twenty-fourths, her original proportion; and of the remaining seven twenty-fourths, being the share of Catharine, each would take in the proportion of the first division, which

would give Maria the one-eighth more of it, than her sister. Instead of Maria, then, receiving only one-eighth more of the whole income than an equal share, she would have that one-eighth of the whole, and also the one-eighth of Catharine's share. The same effect would also be produced, according to the decree, in the division of the principal between the children of Maria and Sally, after the death of Catharine, without issue. I do not think that the testator so intended. He meant to discriminate in favor of his daughter, Maria, and her children, to the extent of one-eighth more of the whole income and principal than the others, but not beyond it. At the death of either daughter, leaving no child or children, the testator directs that the share of such daughter shall sink into, and constitute a part of his estate in the hands of his trustees. Her share would then lose its distinctive character, and become a part of the residue of the estate, and the division then to be made, is not of the income of the share of such deceased daughter, without children, but of the whole residue of the estate. The leading idea of the testator, in that part of the will referring to this matter, appears to be, that the share of the daughter dying without lawful issue, should then be merged into his whole estate, and that no division should then be made of the income of that, as a share by itself, but that being so merged, the interest and income of the whole estate should be divided. The language is as follows: "And in trust, that upon the death of either of my said daughters, leaving no child or children, to pay the interest and income, rents, issues, and profits *arising from my estate*, in the proportions aforesaid, to my surviving daughters and daughter, it being my intention, that on the death of any daughter, leaving no child or children, the share of such daughter shall sink into, and constitue a part of my estate in the hands of my said trustees, and the interest and income arising therefrom, to be divided among my surviving daughters and daughter, in manner aforesaid." This language can scarcely admit of any other construction than as already given. The error of the decree is in dividing the share of Catharine as a distinct

share, instead of treating it as a part of the residue of the estate, and then dividing the whole income and principal according to the proportions named in the will.

What, then, are the proportions into which the whole income should be divided at the death of any daughter, leaving no children ? The will says, "in the proportions aforesaid." The proportions of the shares of each daughter were equal, except that the share of Maria was not only as much as her sisters, each, but one-eighth more of the whole. Maria was to have one-eighth more of the whole, than either of her sisters. Those were the proportions of the three to each other. The proportions of Catharine and Sally were equal. The practical operation of the words, "in the proportions aforesaid," would be as follows : If Maria should die without leaving any children or their issue, but leaving Catharine and Sally surviving her, the share of Maria would sink into the estate, and the whole income would be divided between Sally and Catharine equally, because their proportions are equal. If Catharine should die without any children or their issue, leaving Maria and Sally surviving, her share would sink into the estate, and the whole income would then be divided between them in the proportion of the one-eighth more of the whole to Maria than to Sally, because the proportion referred to between them, was one-eighth more of the whole to Maria than to Sally. In the event, then, of Catharine dying without leaving lawful issue, if it shall happen in the lifetime of Maria and Sally, as contemplated in the decree, the share of Catharine will become, or remain a part of the estate in the hands of the trustees, and Maria will be entitled to one-eighth more of the whole income than Sally, or the same result would follow by allowing Maria to take out of the whole income her original ten twenty-fourths, and Sally to take her original seven twenty-fourths, and then dividing the remaining seven twenty-fourths equally between the two. By this course, Maria would get one-eighth more of the whole than Sally, and not that one-eighth and the one-eighth of Catharine's share, additional. This mode of dividing the income

2 z*

will also control in the division of the principal of the share of the daughter, dying without children. At the death of the parent, her children, if any, are entitled to the principal upon which the parent had received interest and income, and as stated in the will, " upon no construction of this clause in my will, shall the children of one deceased daughter have more than the children of another, except the children of my daughter, Maria Duncan, who shall have the one-eighth more, in manner aforesaid." In the event of Catharine dying without issue, as provided for in the decree, leaving her two sisters surviving, the principal of her share would then be a part of the residue, and such residue of principal should be divided between the children of Maria and Sally, upon their death, so that the children of Maria would have the one-eighth more of the whole, than the children of Sally; the children of Maria would take just one-eighth more than the children of Sally, of the residue of principal. The same result would follow as in the division of the income, by allowing the children of Maria, at her death, to take the original ten twenty-fourths of the whole of their parent, and the children of Sally, at her death, to take the original seven twenty-fourths of the principal of their mother ; and then dividing the remaining seven twenty-fourths of Catharine, equally between the children of the two, the children of each to take only among them, the share represented in the parent. By this mode, the children of Maria would get only one-eighth more than the children of Sally. If Catharine survives her two sisters, then, at her death, the division of her share, it then being the only part of the residue remaining, if Maria and Sally leave children, such share would then be divided between their children equally, for, at the death of Maria and Sally, their children would then have received or been entitled to the shares of their parents, respectively. And the share of the children of Maria, being ten twenty-fourths of the whole, would include the one-eighth of the whole more, which the testator intended they should have. The result of these conclusions is, that the whole decree must be affirmed, except

that part of it which provides for the disposition of the income and principal of the share of Catharine, in the event of her dying without leaving lawful issue, and as to that, the same must be reversed.

The decree of the Chancellor, except in the particular specified, was in all things affirmed; eleven of the judges concurring; not voting, three.